I'll call the first one, which is 16-416-89, United States v. Soza. May it please the Court, Katie Shepard for Mr. Darrin Soza. The issue in this case is whether the government produced sufficient evidence that Mr. Soza had a 2012 DWI conviction and was a fugitive from justice. The answer is no, because the only evidence before the district court was the first page of a probation violator's warrant, and that warrant said nothing about the original conviction, and it doesn't prove that Mr. Soza knew of any pending charges. But before addressing those arguments, I'd like to begin with the government's motion to supplement the record and the standard of review. The government has asked the court to supplement the record with documents that were not before the district court. This court should not allow the government to do on appeal what ought to have been done in the district court. As an initial matter, a merits panel has the authority to overrule a decision by a motions panel, and there are four reasons why this court should not follow the motions panel decision in this case. First, the government— Did the motions panel actually decide the issue, or just leave it to us? The motions panel decided the issue. The motions panel denied my motion to reconsider and then said it was open to consideration by the merits panel, but there isn't actually a pending motion. In this case, the government had notice of Mr. Soza's objection and an opportunity to produce sufficient evidence in the district court. Also, the ordinary— Do you agree if you prevail here and we remand, would the government have the opportunity to introduce it in the district court? No, I don't think the government should be given an opportunity to present new evidence in the district court because the government clearly had the burden of proof the first time around and shouldn't be given a second bite at the apple. What authority says they wouldn't? Because I thought usually when we remand on these issues, you can say it's the amount of drugs in a sentencing. I thought the government could put on three new witnesses on a remand to prove what the amount of drugs were if we said that finding was deficient. This court has sometimes permitted new evidence on remand, but that's typically the exception rather than the rule. For example, in Martinez-Paramo, the court said that the government really should have produced— had obtained and produced all the evidence in the district court but decided to give the government a second chance in that case because of the ongoing development of the law on the crime of violence enhancement. So it really—that opinion reads as the court making an exception. Just the whole—the 922G sort of men's rate question, as you point out and they sort of point out, is sort of in flux, and so the law has to be explored a little bit. I think even with the minimum requirement that the government provides, it's clear that the government didn't meet its burden in the district court. On appeal, the government doesn't argue that even the unsupplemented record allows it to meet its burden. But aren't you—you're contesting even just the conviction. Yes, we are. Well, so— And the government did have notice of that objection. In the PSR, the probation— But you didn't offer rebuttal proof, so if we were to go back down, presumably you would try to present rebuttal proof to the PSR on that point. Well, I think that the government shouldn't be allowed to present new evidence, and under Floyd, it's clear that when the defense counsel makes an objection and requests documentation and then the government doesn't provide that documentation, that the PSR alone is insufficient. But you see my point there. It doesn't—the rules seem to be asymmetrical. You're saying even though you didn't present rebuttal proof below, you still think we should reverse on the conviction when presumably you would now try to present proof that rebutts the PSR. We would only do that if the government were able to produce sufficient evidence. As the record stands— No, I don't think it does. I think under Floyd it doesn't because the government didn't provide the documents after our objection to not providing the documents. And in that case, the PSR had similar details to the PSR in this case. It had the date of the offense and the guilty plea, the length of the sentence. And even with those facts, the court said that that was insufficient. And then also with Floyd, the court pointed out that the fact that the government didn't provide the documents thwarted the ability of the defendant to provide rebuttal evidence. The sentencing—you know, it isn't back for a new trial. We've been wrestling with this. When I look at the law, including the case you cite, Elwood, it really is just does the panel scribble in and the record is final and don't touch it. Then you're right, no second bite. Sometimes we just vacate and remand, and then presumably district court's got all the discretion it wants. If you could make the argument you're making now to the district judge, which is, hey, they shouldn't be allowed another bite, but the government would be free to say, hey, we have good cause. The law was really confusing. Fifth Circuit law was unclear, dancy in the various cases. Why isn't it just best if we vacate and remand a sentencing? This is a long-winded question, but a defendant gets up and he's going to allocute again. He always gets to allocute again. Presumably if he says something really compelling, that's new evidence on his behalf. When you aren't starting a whole trial again, when you're just sending it back for sentencing, I don't see why we would lock a court in. We would leave it up to the district court's discretion. I would bring the court's attention to a case that unfortunately is not in my brief. It just came to my attention. It's U.S. v. Chemical and Metal at 677 F. 3rd 750. It's a 2012 case. I'll repeat the name of that. U.S. v. Chemical and Metal. And the court there said that the government generally— That's a Fifth Circuit case? That is a Fifth Circuit case from 2012. And it says there that the government generally may not present new evidence when reversal is required due to the failure to present evidence originally. And the court there made the decision of whether there should be new evidence. Well, that's what we did in Elwood too, which you did cite. Yes. But I think that the U.S. v. Chemical and Metal case is even stronger on that point and deals specifically with the problem of the sufficiency of the evidence. The law is unclear on this particular issue, right? Your client was convicted of selling AK-47s with obliterated serial numbers, right? Correct. So the question is, does he get this automatic 20 level because he's a prohibited person? Right. And then we look at 922G, and I don't think you dispute that our law says as to other subsections it's just straight status, no mens rea. Right. But your argument is as to this one, we have to show some level of knowledge or intent that he was—right? And I don't think the government disputes that either. There is a circuit split on whether the person has to know that they carry the status as a prohibited person, which we haven't argued is the standard. And there's also the debate about whether the person has to know there are pending charges or whether they have to know that the charges are substantially certain. But I think even at that substantially certain level, there's mens rea required. Can't we unify all the cases? You say split. That's a serious suggestion. Don't all the cases unify where the court just says, well, let's look at the definition. 921 contemplates some volitional element. And the rest is just can we infer from the circumstances. How serious were the charges? Where is he? How long has he been there? Isn't that what they're all struggling with? Yes, and I think that the—and I think I was trying to make the point that you're making, that whatever there is a split on doesn't actually affect the bottom line in this case. And even if, of course, you can use circumstantial evidence to prove something, that doesn't change that there's some level of knowledge. What's the clearest circuit decision of what the mens rea is in your mind? At a minimum, you have to know— Which case best describes exactly what a sentencing court would have to find? I cited the Ballantine case out of the Seventh Circuit. There's also the Clark case. It's an unpublished case from this circuit and the Butler case. And then even the case that the government cites, the Donahue case, talks about knowing that a prosecution is substantially certain. Would you agree if the new evidence, the supplemental evidence comes in, that would be enough to infer that he knew? Yes, I would agree with that. It does really turn on the proof. That's why you started there. Right, exactly. That's why I think supplementation of the record is so important. And I do think that in this case there are efficiency concerns and reasons to not have the government be able to try again because we did make the objection in the district court that the documentation was insufficient to prove that he was a prohibited person. And in the PSR it said that he was a prohibited person because he had this 2012 DWI conviction and because he was a fugitive from justice. So it's clear from the context of the objection that both of those things were at issue in the district court. And then the probation officer said in an addendum that she had made a third request for the documents and would provide them as soon as she received them. But then by the time sentencing came around, it was only the single page of a probation violator's warrant, and so we renewed our objection to the sufficiency of the evidence and asked for a ruling on that. So the government was on notice that we were making an objection to the sufficiency of the evidence, and as this court said in Floyd, if the government doesn't produce the documents, that thwarts our ability to provide rebuttal evidence. And as far as judicial economy as well, this appeal would not have been necessary had the government met its burden in the district court. I could also discuss the standard of review. I do think I've touched on this a bit already, but I do think that we've met the standard of review as de novo. This court's cases say that the obligation is to present the essence of the objection to the district court so that the district court has an opportunity to correct the error, and I think we met that standard in this case. It's permitted under this court's cases for the district court objection to be inartful or the objection to be refined on appeal so long as the gravamen of the argument was presented to the district court, and here we made a sufficiency of the evidence argument in the district court and also on appeal. Remind me, you objected to the PSR 2K2, and then there was an addendum, and what did the probation department say in the addendum? The probation officer... The one-page warrant suffices. It said we made a third request with North Carolina for the documents, and we'll provide them as soon as we can. So what you would say should have happened is the government should have said let's continue sentencing? Yes, the government could have asked for a continuance to get the documents that were still. The only thing that had come back at that point was this incomplete probation violator's warrant that didn't have the underlying conviction at all or any information about the conditions of probation, which is one of the government's arguments on appeal is that now that we have a more complete record, we can see what the conditions of probation were and that the probation officer says that Mr. Sosa violated certain conditions. But without the rest of the document, and also that he has the 2012 conviction, but without the rest of the documents, it's just a warrant that even says it's not for service on it. And I would like to briefly touch on a couple of cases as far as the criminal history points. We do have Floyd that I've discussed a lot already, and then also with the government sites to the Gomez-Alvarez case and the Martinez-Jimenez cases. But in those cases, we didn't just have the PSR. In Gomez-Alvarez, there was a felony complaint and an abstract of judgment that was also in the record. And in Martinez-Jimenez, there was a letter from the Supreme Court of New York signed by the county clerk that corroborated the conviction details. So those cases do discuss relying on the PSR, but the actual records in those cases had more than there is in this case. And finally, if I could discuss harmlessness, the district court in this case, importantly, never considered the correct guidelines range. And so that means that the government bears a heavy and difficult burden to show that the guidelines didn't influence the sentence in any way. And the range before the district court was 9 to over 11 years. But without the prohibited person enhancement, the range would be only 57 to 71 months. And without the prohibited person enhancement and the criminal history points, the range would be 51 to 63 months. The government relies in particular on the district court's remark that the five-year statutory maximum applies in this case, and that was very troubling to the district court. But the context of that remark shows that it was actually influenced by the guidelines range. In that very same sentence, the district court mentioned that the guidelines range was way above the statutory maximum. And basically, without the improper enhancement and criminal history points, the range would have included the statutory maximum, which would have changed the entire dynamic of the sentencing hearing. As it happened, with the errors, the district court had to impose a sentence at least four years below the guidelines range. And as I said, without the errors, the statutory maximum would be encompassed in the guidelines range. The sentencing range, you benefit much more from getting rid of that with a prior conviction than you do the 2K2 level 20? No, I think it's more significant to get rid of the enhanced base offense level. Okay. That's what brings it down to 57 to 71 months. And then with the criminal history points, it would take it down further to 51 to 63 months. So it is more significant. But if it's a whole package of alleged errors, why isn't it best just to get it right? The probation officer's trying to get this extra document. It just seems like, one, let's just find out what the facts are. Is this his prior conviction? And were there indeed these elucidating extra facts as to the violations he committed, the DOI convictions? Let's just figure it all out right. Well, I think the government and the probation officer had a chance to do that in the district court. And despite being on notice of our objection and the... When you reiterate your objection, did you say, hey, we'd like to have sentencing postponed? We see it's coming? No, and I don't think that was necessary because we clearly didn't bear the burden of proof as far as proving the enhancement and the conviction in the first place. The burden was clearly on the government, and we objected to the sufficiency of the evidence. Is there a no for the questions? I have reserved some time for rebuttal. Thank you. Good morning, and may it please the court. Andrew Gould for the United States. This court properly allowed supplementation of the record with copies of the 2012 DWI judgment and the 2014 probation violator's warrant. And as I believe Mr. Sosa now concedes, with those documents, they confirm the correctness of the district court's guidelines calculations, both its application of an enhanced base offense level under 2K2.1A4B and its calculation of Mr. Sosa's criminal history category. Even were this court to reconsider supplementation, however, reversal is still unwarranted no matter the standard of review because at bottom any error is harmless. Turning first to the matter of supplementation, it's true. This merits panel can reconsider a decision of emotions panel. In United States v. Lee, this is at 368 Federal Appendix 548, so it's an unpublished case, Fifth Circuit, 2010, this court recognized that a merits panel recognized we can overturn emotions panel ruling, but has the opposing party offered sufficient justification? And there has been no new justification that a three-judge panel of this court already heard. More to the point, though, allowing supplementation is consistent with this court's path. When it comes to disputed guidelines enhancements and state court documents, this court routinely allows a moving party to introduce these state court documents, and the rationale can be found in Vargas Soto, which is cited in the government's motions briefing. In Vargas Soto, Judge Southwick for the court, he didn't phrase his explanation in terms of whether the motion was opposed or unopposed or the standard of review, whether it was de novo or plain error, but rather just that this court has an independent obligation. When it has afforded an objection on appeal to a guidelines enhancement, it must examine these state court documents to determine the propriety of them. So the motions panel was simply... Isn't there a Federal rule of appeals that governs when and where you can supplement, Rule 10? Rule 10, yes, that's correct. Rule 10... You either do it by that orbit, you either do it by agreement, you do it and the district court validates it and transmits it to us, or you do it directly to us. I think there's also... This court has the discretionary authority outside of Rule 10, and we've cited cases in our motions briefing such as In re G.H.R. and Ecuadorian plaintiffs. In those cases, there's not a mention of Rule 10 or going... How does that coincide with the whole sentencing structure that government has to prove things to a preponderance? How does the defendant get a chance to dispute the authenticity of documents, then? Well, I think, so in this case, for example, the order from the motions panel... Well, we started with an order from a single judge, right? Yes, Judge Owen granted it, granted the government's... The motions panel, in my way of thinking, pulled back and just said, this is tentative, essentially, merits panel, you're going to hear it. So the motions panel said, subject to reconsideration by the motions... Excuse me, the panel that hears the case on the merits, if SOSA can test the validity of the documents or their applicability. Now, again, I agree, the merits panel's not... This panel's not bound by the motions panel ruling, but Mr. SOSA still had an opportunity, at least before this court, to contest the validity of these documents, and he has not done so. He had an opportunity in his reply brief or standing before you today. So we don't have that here. Judge Higginson, I agree with you. The better course of action here, absolutely what should have been for the government or Mr. SOSA to ask for a continuance. When the probation officer said, I've made three tries to get the documents and it hasn't... I haven't been able to do so. What's the limits on your view of supplementation? It seems like you're trying to say there's something special, and maybe there is, about conviction documents. But take, for example, we're getting a lot of challenges to restitution on appeal. Can the government supplement with victim impact statements that show the amount of loss those victims suffered if they weren't introduced in the district court? The bigger question is, what limiting principle is there on supplementation? I'm not sure. I haven't studied the restitution issue. What I will say is that certainly the limiting principle in terms of this case is that these are state court conviction documents. And again, I understand that your question, Judge Costa, and that you're seeing issues with respect to restitution. I'm not prepared to tell you just because I haven't studied that particular issue. But there is certainly a limiting principle with respect to state court documents. And this ties back into the issue of remand. What would happen if, let's say, this court were to reconsider supplementation, disagree with the government in terms of harmlessness, and vacate? What would happen then? Mr. Sosa said up here that it's the exception, not the rule, that the government gets to or the parties then get to introduce new evidence relating to the disputed issue. I disagree with that. And in studying this issue, especially with the reply brief, this is my first opportunity to respond to that, I was looking at this court's precedent on remand. And there's a case, United States v. Corrales-Villata, 617 F. 3rd, 342, 5th Circuit, 2010. And in Corrales-Villata, this court explored this court's practice on remand. And it said, it first said, we used to have a generous view of remand, and that kind of, you know, anything goes. But since then, we've taken more of a middle ground approach. And this middle ground approach is to allow evidence on the vacated issue unless this court, unless the 5th Circuit panel issues limiting instructions. And here's a quote, it says, in the absence of a specific mandate and in the interest of truth and fair sentencing, the district court may consider any corrections and additions relevant to the issues addressed by this court on appeal. But that's what raises my concern, I guess, about the scope of supplementation, because I think what you're saying, and, look, it makes a lot of sense from an efficiency standpoint, is, look, if we're going to remand it and then the government's just going to introduce these state court documents that everyone agrees now establish what the government needs to prove, what's the point? It's inefficient to remand. But if that is the standard we're going to supplement when it would just be futile to remand, it seems to me that opens the door to supplementation not just on criminal history convictions, but on restitution, on drug quantity, because it's often the case that the government on appeal is going to be able to come up with new evidence that would make the issue a pretty easy one on remand. I think, you know, the difference with victim impact statements is, you know, that's testimony. You know, that's testimony from a victim. With state court documents, I mean, these are objective facts. I mean, here it's whether he had this conviction. Maybe it's like Almendarez-Torres where the Supreme Court has said that's the one fact that doesn't need to be proven. Prior convictions are the one fact in the apprendee world that doesn't have to be proven to a jury. So, you know, again, the limiting principle is, at least in this case, I mean, state court documents, I think, are different, and this court has recognized that. And, again, Mr. Sosa did have an opportunity to contest the validity of these documents. So, yes, I mean, getting back to the inefficiency point, absent this court giving instructions and agreeing with Mr. Sosa that the government should not be allowed to introduce evidence, it's going to come back and the government is going to introduce these documents. What's interesting, one of the cases primarily relied upon by Mr. Sosa is the Floyd case, which is more relevant to the criminal history category issue. But in Floyd, the objection was the defendant objected to his criminal history score. He said he didn't have a prior conviction. He affirmatively denied that. Government didn't do anything, just relied on the PSR, went up on appeal. This court said, no, that's where you've got the objection and to, you know, and the defendant has denied it. That's not enough. Floyd, though, didn't remand with instructions that not to consider any new evidence. It was just a general remand. Andrade Aguilar, which is a case cited by Mr. Sosa in his opening brief on the first issue, that's another case where the defendant made the argument that the government should have a second bite at the apple and therefore remand with instructions, and this court rejected that. It drew a dissent from now Chief Judge Stewart. But the court said, well, our course is to allow, you know, absent, again, limiting instructions to allow evidence. Of course, the district court has discretion. So if this court gives no limiting instructions, it's just a general remand, the district court would have the discretion to say, no, government, we're not going to allow you to put this in. But the normal course is not for this court to direct that. In your introductory remarks, you said, you started off saying we should stick with the motions panel on allowing the supplementation. Then you said even if we reverse that and don't allow supplementation, you win because of harmlessness. What's your position if we don't allow the supplementation for getting harmlessness, is there enough in the record to support the prohibited person finding? Without, no, there's not. We concede that on that one page of the warrant, for the reasons presented by Mr. Sosa, it's not enough to connect. That's why we wanted the full documentation. When we vacate and remand with no limiting language, does a new PSR get generated? That's a good question. I believe so. All the timing, you have the response, addendum, it all starts all over again. I don't know whether it's a full-blown PSR. I can ask some of my colleagues and respond. No matter how we limit it, a defendant will be present, correct? Absolutely. And a defendant therefore has to be able to allocate. Absolutely. And under the Pepper case, for example, the defendant would be free to argue for a downward variance based on post-sentencing rehabilitation. So, yes, a defendant would have an opportunity to… Isn't the best course to then let the district court just decide if the government was tardy and mistaken and won't get a second bite? Or the case involves a flux of law and everyone was sort of responsible together and the district court in its discretion will consider more? It may be, Judge Higginson, but I still think this court needs to consider the harmlessness issue. In the first instance, based on supplemented records? No, no, no, not… So this is if the court were to reconsider supplementation. So let's say the court were to go off of the record as it was before the district court. In that case, we concede that there wasn't enough to apply the enhanced base offense level. He drops down and the government's view to a 23-3. He did not object. He did not object to his criminal history score calculation below. He did not deny the fact of the DWI conviction. And that one point is enough to put him in a criminal history category three. So at a 23-3, it drops down to 57 to 71 months. That 71 drops to 60 because of the statutory maximum. Even if you were to agree with Mr. Sosa that it should be a 23-2, then it's 51 to 60. This is not a typical guidelines error case. In the typical guidelines error case, the guidelines range is, in this case, 108 to 135 months, putting aside the statutory maximum. And the judge says, you're scored at a 29-3, and I impose a sentence of 108 months. That's not tied to any statutory minimum or maximum. Here, the district court was clear. I mean, she wanted to impose the statutory maximum sentence. There's a detailed colloquy when the district court— Before you get into the facts, just because your time's going to run out, I am still interested in the underlying question of law. From listening to opposing counsel, do you both agree that 922G2 does require some knowledge by incorporating 921? In other words, it is not like Dancy and what's the other case, Butler? Because this case presents us two big questions. One is the mechanics of remand rule, Rule 10 supplementing. But separately lurking here is let's get—let's figure out for district courts when they get to impose the fugitive in answer. I think there are some circumstances. So it's not that the—it seems like the parties agree that the defendant need not have knowledge of his prohibited status. He need not know that he's a fugitive from justice. But you're right in that 921A15 is any person who has fled from the state. So in our case, we've relied heavily upon Donahue, which is an unpublished case from the Third Circuit, in which the defendant knew or reasonably should have known that prosecution was substantially certain to follow. So I think there are— There is a knowledge element. Not as to the fugitive component, but yet kind of lurking in the background, if that makes sense. All that makes sense to me is I thought I heard them embrace Donahue, and I hear you embracing Donahue, so I need to reread Donahue. But that would sound like instead of a big split out there with people disagreeing, there's a general consensus that G2 is different. G2, the government has to prove by a preponderance that they—what's the exact word? Fled to avoid prosecution, which sounds intentional. Right. I would actually— Correct. It's the details in the warrants. They weren't those here unless we supplement. Correct. Correct. And just—I do agree with Mr. Sosa, though, that there actually does appear to be a circuit split on the knowledge issue. I mean the Ninth Circuit seems to be pretty clear that the defendant has to know of his— Which case is that, Spillane? No, no. Spillane is the Fourth Circuit. This is Durkin, and there's another— But he has to know. Everyone's got to say that if there is a knowledge element. But they use—excuse me. They use knowledge of the prohibited status. So that's where the split arises. In Butler, which is not 922 G2 but G6, this court said it would be illogical to impose a mens rea requirement on one of the subsections and not the other. I understand it's kind of a complicated task because we're saying there's not a knowledge requirement as to prohibited status, but there is some knowledge requirement or reckless disregard, what have you, relating to the intent to flee. But as to the prohibited person part, there isn't. Okay, great. Back to—on harmlessness. So even under a 23-2, which is 51 to 60 months, again, this wasn't a—this wasn't—the district court didn't impose this sentence thinking about it in terms of the guidelines. She imposed this as a statutory maximum, and this is that ROA 95. And when you go before it, I cited the three-plus page colloquy, 93 to 96. She goes on at length about how bad this crime is, how this crime kind of goes outside the heartland of obliterated possession of firearms at the obliterated serial numbers based on the egregious facts of this case. And then she says at ROA 94 that very frankly she was troubled that she was limited to the statutory maximum. Now, it's true that she also said before that the guidelines, you're way above that, thinking the 108 to 135, but that very frankly and troubled—I disagree with Mr. Sosa. So when you read that in context, it's clear. She was troubled by the fact that she was limited to 60 months, that she would have gone higher. That was with the mistaken idea, if you will, of the greatly excessive under the guidelines without that limit, whereas if, as you pointed out, it were shifted down, there wouldn't be a great difference. So although the judge operated, assuming you were to find error, under the allegedly incorrect range, again, when actually imposing the sentence, she imposed it as, quote, a statutory maximum. The focus was on the statutory maximum based on the egregious facts, not the low end of the guidelines, the high end of the guidelines, the statutory maximum. That's what Judge Alvarez wanted to impose. And in cases like as cited in the government's brief, in United States v. Gross, in United States v. Jones, this is evidence of harmlessness. If the court has no further questions, we ask that you affirm the judgment of the district court. Thank you. May it please the court, I'd like to begin by discussing the Donahue case that's out of the Third Circuit. In there, the facts of that case actually showed intent to flee the jurisdiction to avoid prosecution. The defendant in that case had been sentenced and ordered to surrender the next month. He failed to appear, and he had actually signed something that said if you fail to appear on your date of surrender, you may be further prosecuted. And then when he was found a couple of weeks later, he actually had materials on him about how to flee, how to be a fugitive from justice. So in that case, it's clear that as much as whatever the court said about the standard, the facts supported an actual intent to be a fugitive from justice. And as far as the supplementation issue, I do think it's significant that most of the cases the government cites, as far as criminal cases, the supplementation was unopposed. As Judge Higginson pointed out, Rule 10e permits supplementation on the stipulation of the parties. And as far as the cases involving plain error, I think that is significant because in those cases, there was a brand new argument on appeal that had not been made in the district court at all as far as challenging a 16-level enhancement. And in this case, we did make an objection to the sufficiency of the evidence. And as far as the government's civil cases on the supplementation question, in Ecuadorian plaintiffs, the court actually decided not to allow the supplementation in that case because the party had provided newly obtained evidence. In the GHR Energy case, the document at issue was actually a notice of appeal that had been before the bankruptcy court. It didn't make it into the record before the district court, but it actually had been before the bankruptcy court. Well, is there any question that if we were to remand and allow everything, that even an adjustment in the guidelines range, this judge is going to sentence him to 60 months? I think with the guidelines range, without the errors actually encompassing the statutory maximum, that changes the dynamic of the sentencing hearing. As it happened, the district court could not have imposed a guideline sentence of 108 to 135 months. She had to depart downward from the guidelines by at least four years in order to comply with the statutory maximum. And I think that context is critical for understanding the district court's comments. And perhaps with a guidelines range of only 57 to 71 months or 51 to 63 months, the court would have been more receptive to the mitigating arguments in this case. Although this crime is a serious crime, the other crimes in Mr. Soso's criminal history are all misdemeanors. And perhaps had the court not been bound by that statutory maximum to come down so far, it would have really been a very different sentencing hearing. The district court gave the 2K2 level 20 because it thought the proof was sufficient, correct? Yes. But the error there you're saying is it thought it was sufficient, but it applied an incorrect standard, just automatic status like G1 and G6? It appears that that's what the district court did because it was based on the face of this warrant that didn't prove— But if that's a fair assumption, and I agree with you, then the district court committed legal error. We'd send it back down, here's the right standard. It isn't automatic like the other subsections. And then since it was legal error, we wouldn't normally say, but you can't consider facts relevant to a standard you didn't know had to be applied. But I think the umbrella over all of that is the sufficiency of the evidence question. And it is clear that the government bore the burden and didn't meet its burden in the district court. Right. But you see my point. Sufficiency depends on what you have to prove. And if everyone was under a misapprehension or the district court actually erred legally in terms of what had to be proven, we wouldn't normally say, well, you can't even get evidence that you didn't know you had to get. I think part of the response to that is that the government on appeal doesn't even argue that the evidence in the district court was sufficient to establish that he was a fugitive from justice. Right. But we're reviewing the district court's ruling. And if we see that it got it wrong legally, that's sort of a simple way to say get it right legally. And district court, by the way, you have discretion to accept or not. If it looks like the government is getting a second bite somehow, you don't have to accept it. It would be sort of doing what the motions panel did to us. We're not going to lock the box up. I do think there are concerns about letting this all happen on appeal, though. In this case, the government did further investigation to get these documents that was not done in the district court. But we wouldn't endorse that if we don't ourselves find it harmless. You both would sort of win. Well, I think that there are reasons, as I've articulated, why I don't think the government should be given a second chance in the district court. And for those reasons, I'd ask that you vacate and remand on a closed record. Thank you.